HOMER L. FAULKNER, Appellant, v. Q. HOOK et al.

CHARLES W. SLATTEN, Appellant, v. Q. HOOK et al.

I. H. WENDLING, Appellant, v. Q. HOOK et al.

#### Division One, July 31, 1923.

1. **TRESPASS: Permissive Use: Limitations.** In the absence of some showing that the use of land was permissive in its origin, and where the user claims an easement by prescription and shows an open, continuous, visible and uninterrupted use for the period of the ten-year Statute of Limitations, the burden is cast upon the landowner to show that the use was permissive, rather than adverse, if he claims it to have been such.

2. ———: ———: **Prescriptive Right.** A prescriptive right to a conditioned use may be acquired by continuous and open use for the period of limitations.

3. ———: ———: ———: **Gates.** The owner of the servient estate has a legal right to maintain gates at each end of a way acquired by prescription; but the erection of gates or bars by consent or without adverse claim does not prove an abandonment of such way or destroy the right to the use thereof. The maintenance of gates is no negation of the easement.

4. ———: ———: ———: **Immaterial Deviations from Way.** Immaterial deviations from the way in which the user has a conditioned use acquired by prescription, or changes in its course to avoid mud holes or temporary obstructions, or like changes made for the convenience of the landowner and by consent, do not destroy the right of way or defeat its acquisition.

5. ———: ———: ———: **School District: Voters.** The inhabitants of a school district or voting precinct may acquire by prescription a way over land to a school house, which is not reached by public roads, and even a dedication may be for a partial use.

6. ———: ———: ———: **Injunction.** Inhabitants of a school district who have by nearly fifty-years' use and a prescriptive right acquired a right of way over lands now fenced, used by them in reaching a school house inaccessible by public roads, and also used as a voting precinct, cannot be enjoined from its use for the limited purposes of access to the school house.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*J. A. Selby* and *Nat. G. Cruzen* for appellants.

(1) Every unauthorized entry upon the land of another is a trespass, even though no damages are done, or the injury is slight. 38 Cyc. 995; Tubbs v. Lynch, 4 Harr. 521; Pfeiffer v. Grossman, 15 Ill. 53; Hatch v. Donnell, 74 Me. 163; Brown v. Manter, 22 N. H. 468; Barney Castle v. Walker, 92 N. C. 198; Daugherty v. Stepp, 18 N. C. 371; Norvell v. Gray, 1 Swan. 96; Ritter v. Sieger, 105 Pa. St. 400; Ketcham v. Cohn, 22 N. Y. Supp. 181; Western Union Tel. Co. v. Dickens, 148 Ala. 480; Sefton v. Prentice, 103 Cal. 670; Purto v. Chieppa, 78 Conn. 401; Chase v. Cochran, 102 Me. 431; Gusdorff v. Duncan, 94 Md. 160; Agnew v. Jones, 74 Miss. 347; Patchen v. Keeley, 19 Nev. 404; Bergman v. Vogt's Admr., 172 Mo. App. 61; Flynt v. Ry. Co., 38 Mo. App. 94; Naylor v. Hughes, 60 Mo. 105. (2) Injunction is a proper proceeding to restrain a trespass upon realty. 22 Cyc. 763; High on Inj. (4 Ed.) sec. 661. Especially is injunction a correct remedy to restrain a trespass where a party claims a right of way over land, the use of which if permitted will ripen into an easement, or a right, even though the damage suffered is small. High on Inj. (4 Ed.) sec. 702; Murphy v. Lincoln, 63 Vt. 278; Leonard v. Castle, 78 Cal. 454; Warren-Hill v. Seed Co., 65 Miss. 391; Heilbon v. Canal Co., 75 Cal. 426; Ellis v. Wren, 84 Ky. 254; 22 Cyc. 762, note 20; Cobb v. Chemical Co., 179 Mass. 423. Injunction is proper when the injury is irreparable, or when it cannot be adequately compensated in damages, as when there is no certain pecuniary standard for the admeasurement of damages. 22 Cyc. 763; State Sav. Bank v. Kercheval, 65 Mo. 682. One who aids, abets or assists in trespass, or counsels

it, is liable for the trespass. Sperry v. Hurd, 267 Mo.. 626. Servants and principals are both liable. Reber v. Bell Tel. Co., 196 Mo. App. 67; Ewen v. Hart, 183 Mo. App. 107; Robinson v. Min. Co., 178 Mo. App. 531; Dyer v. Tyrrell, 142 Mo. App. 467. (3) An easement can only be created by grant or by prescription. If by prescription (a presumed grant), there must exist the following conditions: (a) There must be a grantee capable of taking under the presumed grant. (b) It must be under a claim of right. (c) There must be a continuous and uninterrupted user for ten years, the statutory period in this State. (d) The use must be with the knowledge and acquiescence of the owner of the servient tenement, either actual or implied. (e) The right claimed must be adverse and not merely a permissive use. (f) There must be a definite line of travel. 19 C. J. 873. (4) Permissive use of a way over another's land will never ripen into an easement by prescription, no matter for how long a time it may be enjoyed. 19 C. J. 897; Garnett v. Slater, 56 Mo. App. 207. (5) The unorganized public cannot acquire an easement by prescription, there must be a grantee capable of taking the presumed grant. 19 C. J. 876; Turner v. Hebron, 61 Conn. 175; Union Pac. Ry. Co. v. Rollins, 5 Kan. 167; Hill v. Lord, 48 Me. 83; Bly v. Edison Elec. Co., 58 L. R. A. 500; Curtis v. Kessler, 14 Barb. 511; Munson v. Hungerford, 6 Barb. 265.; Clements v. West Troy, 10 How. Pr. 199; Pearsall v. Post, 20 Wend. 111; Merwin v. Wheeler, 41 Conn. 14. (6) To establish a public highway by prescription, there must exist the following conditions: (a) It must have been used by the public for the prescribed length of time, which in Missouri, is ten years. (b) Such use must be over a definite line of travel. (c) The use must be continuous. (d) Such use must be adverse and hostile to the rights of the owner. (e) And in this State there must have been expended on such highway, money or labor for the prescribed period of ten years by the public authorities. And in the event such claimed

highway is over wild and unoccupied land, the adverse use must be under a claim or color of right and not be mere license or permission by the owner, and such use must be such use as will put the owner of the highway on notice that the highway is claimed as a right. Sec. 10635, R. S. 1919; 29 C. J. 371. (7) In this State a public highway cannot be established by use alone. There must also be an expenditure of public money or labor for the ten-year period. Sec. 10625, R. S. 1919. (8) To properly plead a public highway either by grant or by prescription, the pleading should set out and describe a definite line of travel, which is not done in this case, because the pleaders in an indefinite way, plead the right to go over the lands of plaintiffs at any and all places. 19 C. J. 1001; 29 C. J. 371. (9) Putting in fences and gates shows that owner of servient estate does not recognize easement. 19 C. J. 987; 37 Cyc. 25. Likewise the deeds to the land in question, when there are no reservations, restrictions or exceptions, go to show that the owners do not recognize any easement in the land. Anthony v. Building Co., 188 Mo. 723. (10) The placing of a gate or fence across a private way prevents an acquisition of an easement in such way by the public, because it shows that the owner exercises control of the way, and if the public use the way the use is not adverse to the owner. Jones on Easements, 469; Jones v. Phillips, 59 Ark., 35; Shellhouse v. State, 110 Ind. 509; State v. Green, 21 Iowa, 693; Chestnut Hill Turnpike Co. v. Piper, 77 Pa. St. 432; Cyr. v. Madore, 73 Me. 53; State v. Mitchell, 58 Iowa, 567. (11) Dedication can only be made by the owner of the fee and no dedication could be made by Charles W. Slatten, who only had a life estate. Jones on Easements, 444.

*L. B. Gillihan* and *Dudley & Brandom* for respondents.

(1) The public may acquire an easement in a road by ten year's use, under a claim of right. State v. Wal-

ters, 69 Mo. 463; Fugate v. Pierce, 49 Mo. 441; Callaway v. Nolley, 31 Mo. 393; Leiweke v. Link, 147 Mo. App. 26; Strong v. Spurling, 200 Mo. App. 84. (2) And long use creates the presumption of a grant. It is well settled that the enjoyment of an incorporeal hereditament for a time sufficient to acquire title to the soil by adverse possession affords a conclusive presumption of a grant. 19 C. J. 874; Anthony v. Building Co., 188 Mo. 704; Boyce v. Railroad, 168 Mo. 583; State v. Walters, 69 Mo. 463; Power v. Dean, 112 Mo. App. 288; State v. Macy, 72 Mo. App. 427; Smith v. Muskgrove, 32 Mo. App. 241; House v. Montgomery, 19 Mo. App. 170. (3) While it is true that, strictly speaking, the unorganized public cannot acquire prescriptive rights since, in such case there are no grantees capable of taking, yet, by common uses, a highway or other public easements such as a public footway in connection with the railroad bridge, or the right to pollute a stream, or to a ford or a landing, can be created by prescription. 19 C. J., 876, sec. 22. (4) A right of way is acquired by prescription where used for the prescriptive period. The existence of gates will not weaken the force of such uses, for the easement of a right of way may exist as well with as without gates. The question of convenience or necessity is immaterial and it is of no consequence that the party claiming the easement had access to another way. 19 C. J. 895, sec. 71; Novinger v. Shoop, 201 S. W. 64; Sanford v. Kern, 223 Mo. 616; Geismann v. Trish, 151 Mo. App. 714; Leiweke v. Link, 147 Mo. App. 126; Graham v. Olson, 116 Mo. App. 272. A party is not strictly confined to a definite line of travel. The substitution of another way through a part of the land will not affect the easement. Reasonable deviations are permissible. Detours to avoid obstructions, such as fallen trees, mud holes and the like, and departures from the line of travel for the convenience of the landowner, will not impair the right to the easement. 19 C. J. 899, sec. 77. Where land is conveyed with no means of access ex-

cept over the remaining land of the grantor a way of necessity is granted by implication of law. 19 C. J. 923, sec. 117; Chase v. Hall, 41 Mo. App. 15. If the land is partly surrounded by that of the grantor and partly by that of strangers a right of way exists by necessity. 19 C. J. 927, sec. 124. The right to a private way acquired by adverse use is not a license. It is a vested right. Power v. Dean, 112 Mo. App. 288. Equity will not undertake to prevent an injury by injunction unless the injury is irreparable. 22 Cyc. 762; State v. Wood, 155 Mo. 425; Harleson v. Tyler, 219 S. W. 908.

JAMES T. BLAIR, J.—Faulkner, Slatten and Wendling sued separately to enjoin respondents from trespassing on their respective lands. The trial court rendered judgment against each of them, and these three appeals followed. The cases have been re-assigned. They will be considered as one.

Appellants do not state the facts in detail, and that example will be followed. The evidence is quite conflicting. When the record is considered and due deference is given the findings necessarily implicated in the decree, the facts appear to be with respondents. In 1869 or 1870 certain residents of Daviess County organized a school district. Much of the territory was uninclosed. A site for a school house near the center of the district was given by Andrew Buzzard. Much of the material and labor in construction was donated by citizens of the new district. The school house was used for school purposes from about 1869 or 1870 until 1921, when it burned. It was used as a precinct voting place for nearly forty years before the fire. At the beginning the pupils reached the school house along any path they chose to travel over the open lands about it. Some of the farms began to be fenced. The school house stood on a parcel at the northeast corner of the southeast quarter of section nine. Buzzard owned the whole of section nine except the northeast quarter, which

was owned by Hamblin. Miller owned the west half of section ten. The interference offered by the fences collected, in a sense, the indiscriminate travel over the lands, and a roadway soon came into use. A public road ran along the north side of section nine and of section ten. Another ran along the east side of section ten. Another came into use north and south about through the middle of the west half of section nine. The way used to the school house first led from the road north of section ten, leaving it at the half mile post, south to the northwest corner of the south half of the northeast quarter of the section, now owned by respondent Hook, and then ran in a southwesterly direction to the school house. Another such way, or part or continuance of the first, ran from the road in the west part of section nine northeasterly to the school house. Its juncture with the road last mentioned was near the home on the Buzzard, now Slatten, farm. Subsequently, the way from the north and east was changed so that it reached the public road on the east of section ten over respondent Hook's land. There is no complaint about this part of the road and it is not involved in the case. For nearly fifty years there was general use of this way, or these ways, for access to the school house. Gates were maintained at the *termini*, but the evidence justifies the finding that no denial of the right to use the way was inferable from this. There is evidence that the way was not a definite one, but was changed by the users frequently. The evidence to the contrary, at least so far as is necessary to show a use for more than one statutory period of ten years, is amply strong to support the trial court's finding to that effect. There was evidence that there was travel *extra viam* to avoid mud holes and fallen trees and in response to slight changes in fence lines by the landowners. There is no substantial evidence of any interference with the use of a kind implying a denial of the right until after the school house burned and a controversy arose with respect to a removal of the school

house site to a location on the public road. The school house was almost rebuilt before these suits were begun.

It is true that a use which is permissive in its origin remains permissive until a "distinct and positive assertion of a right hostile to the owner" is "brought home to him." [Pitzman v. Boyce, 111 Mo. l. c. 392.] It is also true that the general rule is that the burden is upon the claimant to show the adverse character of the use; but in the absence of some showing that the use was permissive in its origin it is well settled that when one claims an easement by prescription and shows an open, continuous, visible and uninterrupted use for the period of the ten-year Statute of Limitation, the burden is cast upon the landowner to show that the use was permissive, rather than adverse, if he claims it to have been so. [Pitzman v. Boyce, 111 Mo. l. c. 392; Gerstner v. Payne, 160 Mo. App. l. c. 295, and cases cited.] This is the general rule. [Smith v. Pennington, 122 Ky. 355, 8 L. R. A. (N. S.) 149, and note; Barber v. Bailey, 86 Vt. 219, 44 L. R. A. (N. S.) 98, and note.] A prescriptive right to a conditioned use may be acquired as well as to an unhampered one. In Rogerson v. Shepherd, 33 W. Va. 307, it was said that "if the way acquired by use, although well marked and defined, is restricted, during the time required for the establishment of the right, to a use and enjoyment thereof with bars or gates across it, the right acquired will be restricted to the same extent." [Brookshire v. Harp, 186 Ky. 217.] The owner of the servient estate may acquire by prescription a right to maintain gates across a way. [Ailes v. Hallam, 69 W. Va. 305; Ball v. Allen, 216 Mass. 469; Smith v. Pennington, supra.] The erection of gates or bars by consent or without adverse claim does not prove an abandonment of a way or destroy the right thereto. [Van Blarcom v. Frike, 29 N. J. L. 516; State v. Pettis, 7 Rich. L. 390; Welsh v. Taylor, 134 N. Y. 450.] There is ample authority for the proposition that the owner of the servient estate has a legal right to maintain gates

at each end of a way acquired by prescription, or otherwise. [Luster v. Garner, 128 Tenn. 160, Ann. Cases, 1914 D, 769, and note; Sugar Co. v. Stephenson, 34 Utah, 184; Mitchell v. Bowman, 74 W. Va. 1. c. 502; Chenevert v. Larame, 42 R. I. 426; Jones on Easements, sec. 406.] Under this view of the law, the maintenance of gates is no negation of the easement. [Smith v. Roath, 238 Ill. 251; Dunham v. Dodge, 235 Mass. 367; Ford v. Rice, 195 Ky. 185; Palmer v. Newman, 91 W. Va. 13.] Immaterial deviations from the way or like changes in its course to avoid mud holes or temporary obstructions or like changes made for the convenience of the landowner and by consent do not defeat the right to the way, or defeat its acquisition. [Moll v. Hagerbaumer, 98 Nebr. 1. c. 556; Trustees Cin. So. Ry. Co. v. Slaughter, 126 Ky. 1. c. 497; Wendler v. Woodard, 93 Wash. 684, citing 9 R. C. L. 776; Eureka Land Co. v. Watts, 119 Va. 506; Flener v. Lawrence, 187 Ky. 384; Starks v. Hobdy, 248 S. W. (Ky.) 867.]

The inhabitants of a school district or voting precinct may acquire a way by prescription (Washburn on Easements (4 Ed.) chap. 1, sec. 5, 1. c. 126, 177, 198, 199, et seq.), and even a *dedication* may be for a partial use. [Ibid. 214.]

These principles decide the case. There are details of the evidence upon which independent questions are attempted to be raised, but these details expend their force upon the issues of fact decided by the court and have been given their due weight. The decree is not to be construed to permit the indiscriminate use of surrounding lands as in earlier times. Nothing was acquired by that use. Respondents were using the roadway only. The meaning of the decree is that, under the facts, they cannot be enjoined from its use for purposes of access to the school house. The question whether there has been another use of the way which establishes it as a public road for all purposes need not be decided.

The judgment is affirmed. All concur.