Hershul SPEER and Geneva Speer, his wife, Appellants,

v.

Robert J. CARR and Eleanor May Carr, his wife, Respondents.

No. 53026.

Supreme Court of Missouri, Division No. 2.

June 10, 1968.

Motion for Rehearing or to Transfer to Court En Banc Denied July 8, 1968.

Kenneth W. Shrum, Marble Hill, for appellants.

Rader & Grimm, by William S. Rader, Cape Girardeau, for respondents.

HOLMAN, Judge.

In this suit plaintiffs sought a judgment to the effect that they had acquired an easement by prescription to use a roadway over certain land owned by defendants. The road (approximately 1300' long and 30' wide) ran from the public highway to plaintiffs' farm. Prior to the filing of this suit defendants erected gates across the roadway at both their north and south property line. Plaintiffs also sought injunctive relief requiring the removal of those gates. A trial before the court resulted in a judgment for defendants. Plaintiffs have duly appealed. We have jurisdiction because title to real estate is directly involved. Cramer v. Jenkins, Mo. Sup., 399 S.W.2d 15.

Hershul Speer (hereinafter referred to in the singular as plaintiff) testified that he bought a farm from Leonard Dunn in 1964; that the roadway then being used to go from the public road to the farm ran across the farm now owned by defendants; that he used that roadway from that time until August 1965; that defendants erected gates across the road and put locks thereon in June 1965; that Mr. Carr at that time gave him a key to the locks so that he could continue to use the road; that he accepted the key but immediately began consulting with an attorney as to his rights; that in August 1965 defendants changed the locks so that he could no longer use the road. This suit was thereafter filed. Plaintiff further testified that after defendant closed the road he had to use another route to get to his farm which was three miles long and which included a long hill that was almost impassable for travel by automobile.

Defendant Robert Carr testified that he bought the farm in question in June 1964 and thereafter cleared the brush, fenced the farm, sowed it in permanent pasture, and put cattle on it; that when he fenced

the farm in June 1965 he placed gates across the roadway in question; that he first had a conversation with plaintiff and told him that he would give him a key to the locks and that plaintiff had agreed to the erection of the gates; that on Labor Day weekend 1965 he found one of the gates unlocked and the gate open; that he then immediately advised plaintiff that he was "locking him out", and new locks were placed on the gates.

The roadway in question had been used for more than 60 years before the date of the trial; no witness could remember when its use first began.

Joe Beuhler, who owned the plaintiffs' farm from about 1936 to 1962, testified that he and others going to and from his farm used the roadway in question during all of that time; that he repaired the road periodically, and its course has never been changed; that he did not ask Mr. Blaylock (who owned the farm now owned by defendants) for the right to use the road because "I felt it was my road."

Mr. Beuhler's son, Luther, testified that he had been familiar with the road in question for 42 years, and everybody seeking access to the farm now owned by plaintiffs had used the road during that period of time. It was the testimony of Oscar Schrader that he was 69 years of age; that the general public had used this roadway ever since he could remember; that he remembered visiting people who lived on the farm when he was a boy and, at one time, he rented the farm for a year.

R. L. Blaylock had owned the farm over which this roadway ran from 1947 until he sold it to defendants in 1964. He testified that during the time he owned the farm the roadway was used by people going to and from the farm now owned by plaintiffs; that people using the road did not ask his permission but "just went when they wanted to."

Leonard Dunn testified that he bought the farm from Mr. Beuhler primarily to obtain the timber; that he owned it for about two years and removed much of the timber and then sold it to plaintiffs; that he had been familiar with the roadway for 40 years and that whoever lived on plaintiffs' farm used that road.

The precise question presented upon this appeal is whether plaintiffs have acquired an easement by prescription to use the roadway heretofore described which runs across land owned by defendants. Such an easement may be established by use which is shown to have been continuous, uninterrupted, visible, and adverse for a period of ten years. Dalton v. Johnson, Mo.Sup., 320 S.W.2d 569.

"In a case of this nature it is our duty to review the case de novo, weigh the competent evidence, and reach our own conclusions as to the facts, but 'due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.'" Franck Bros., Inc. v. Rose, Mo.Sup., 301 S.W.2d 806, 811. In this case, however, we find very little, if any, conflict in the testimony we consider decisive.

The undisputed testimony shows that this roadway had been openly and continuously used for a period of from forty to sixty years prior to the trial in 1966. Defendants do not seriously contend otherwise. Their primary contention is that the use was permissive. However, "in the absence of some showing that the use was permissive in its origin it is well settled that when one claims an easement by prescription and shows an open, continuous, visible, and uninterrupted use for the period of the 10-year statute of limitation, the burden is cast upon the landowner to show that the use was permissive, rather than adverse, if he claims it to have been so." Fassold v. Schamburg, 350 Mo. 464, 166 S.W.2d 571, 572.

The only evidence relied on by defendants to show permissive use was a

conversation which is said to have occurred in 1947. That appears in the testimony of Mr. Blaylock concerning a conversation with Mr. Beuhler, as follows: "When I first moved there he come over there and we talked about it and I said, 'You go ahead and use the same road.'" It will be noted, however, that Mr. Beuhler denied that such a conversation took place, and denied that he ever asked Mr. Blaylock for permission to use the road; and, although frequently asked the specific question, Mr. Blaylock would never state in his testimony that Mr. Beuhler requested such permission. We therefore do not find that Beuhler sought and Blaylock granted him permission to use the road in 1947. However, even if we assume (for the purpose of discussion) that such permission was granted it would not be decisive of this case. This, for the reason that we find from the undisputed evidence that the easement had been established long before 1947. See Dalton v. Johnson, Mo. Sup., 320 S.W.2d 569, Smith v. Santarelli, Mo.App., 207 S.W.2d 543, and Cramer v. Jenkins, Mo.Sup., supra. Since the easement had been established by plaintiffs' predecessors in title it would continue until extinguished. And, it is well settled that the testimony relied on by defendants relating to permission would not be sufficient to extinguish the easement. "[I]t is a general rule that an easement, once established, is not divested by the acts of the owner of the easement in seeking and obtaining permission or license from the owner of the servient estate to make the same use of the latter's premises as could be made under the existing servitude." 25 Am.Jur.2d, Easements and Licenses, § 109, p. 513. See also Cook v. Bolin, Mo.App., 296 S.W.2d 181[21], and Bridle Trail Ass'n v. O'Shanick, Mo.App., 290 S.W.2d 401[10].

Since, as we have held, plaintiffs' predecessors acquired an easement to use the road in question, which has not been extinguished, that easement became an appurtenance to the farm acquired by plain-tiffs and passed to them although not mentioned in the deed. We accordingly rule that plaintiffs were entitled to the relief sought.

The judgment is reversed and cause remanded with directions to the trial court to enter a judgment for plaintiffs.

DONNELLY, Acting P. J., and EAGER, J., concur.

FINCH, P. J., not sitting.